**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | |
|---|---|
| DAIRY FARMERS OF AMERICA, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 5:11-CV-6052-FJG |
| BASSETT & WALKER INTERNATIONAL, INC. | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is Defendant Bassett & Walker International, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 6).

**I.    STATEMENT OF FACTS**

On March 18, 2011, Dairy Farmers of America, Inc., (DFA), a Kansas cooperative marketing association headquartered in Kansas City, Missouri, reached an oral agreement to supply 220,000 pounds of non-fat dry milk to Bassett & Walker International, Inc., (BWI), a Canadian corporation based in Toronto, Ontario. DFA delivered the product to BWI but DFA alleges that BWI failed to render payment. DFA filed this suit on June 23, 2011, asserting five counts for breach of contract and one count for unjust enrichment.

BWI contends that this Court does not have personal jurisdiction over it. BWI argues that this Court's assumption of jurisdiction over it would not comport with the principles of Due Process, and BWI contends that it has insufficient contacts with the forum state that it could not have reasonably expected to be haled into court in Missouri.

Prior to the disputed transaction, the two companies had a five-year relationship as BWI regularly purchased dairy products from DFA. The two companies have engaged in more than 80 transactions that amounted to the purchase and sale of more than 3.5 million

pounds of DFA products with a total cost of about $5 million. The March 2011 transaction in question followed the course of dealing previously established by the two companies. The companies do not have a long-term contract but orally negotiate each individual deal. Typically, George Butterfield, DFA's director of international sales, and Alejandro Diaz, vice president of BWI's dairy commodities division, negotiated the deals as oral contracts over the phone. Mr. Diaz is based in Toronto, and Mr. Butterfield primarily works out of Michigan. The oral negotiations generally followed one of two paths: either Mr. Butterfield in Michigan proposed the price and Mr. Diaz in Canada accepted or rejected it, or Mr. Diaz in Canada would name a price and Mr. Butterfield, as DFA's agent, either accepted it or rejected it from in Michigan.

BWI is an international commodities broker. It is a foreign corporation that is organized and exists under the laws of the Province of Ontario, Canada. It has no presence in Missouri. BWI is not qualified to do business in Missouri and does not have an agent for service of process in Missouri. BWI has no property, offices, telephone listings, employees, sales representatives, property, or bank accounts in Missouri.

BWI also does not market its products or services in Missouri. It does not advertise in Missouri, and it does not employ anyone in Missouri. Additionally, BWI does not broker sales for any products anywhere in the United States. BWI is sought out by international customers who request that BWI procures, or sources, the products they need.

DFA is a Kansas cooperative that operates nationally and has its headquarters in Kansas City, Missouri. It conducts most of the administrative work required in the business out of the Kansas City office. This work in Kansas City includes billing, approval of the transaction in terms of supplies available and price, arranging the customs documentation necessary for shipping the products internationally, coordination of the delivery of the products, and other similar administrative functions.

DFA also in its Missouri headquarters conducted the work necessary to review,

approve, and extend a line of credit to BWI, which BWI originally requested in 2009. BWI subsequently sought two increases to this line of credit with DFA. In seeking the credit and the credit increases, BWI sent e-mails to a DFA employee in Missouri. That DFA employee investigated BWI's credit request from her office in Kansas City. However, DFA does not produce the products sold to BWI in Missouri. DFA shipped the products purchased by BWI from Portales, New Mexico, or Fort Morgan, Colorado. The products were shipped outside of the United States to BWI's international customers.

## II. STANDARD

"On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof." *Cantrell v. Extradition Corp. of Am.*, 789 F.Supp. 306, 308 (W.D.Mo. 1992). "The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* at 308-09. "[T]here must … be some evidence upon which a prima facie showing may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction. Once jurisdiction has been controverted or denied, (the plaintiff has) the burden of proving such facts." *See Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977) (citations and internal quotation marks omitted).

The Due Process Clause protects an individual from being subject to "binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 471-2 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The determination of whether "an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108 (1987) (quoting *Burger*

*King*, 471 U.S. 462, 474). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

Personal jurisdiction may be specific or general. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while 'general jurisdiction … refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) (quoting *Bell Paper Box Inc. v. U.S. Kids Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)).

### III. DISCUSSION

A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The Eighth Circuit has noted that the recent decisions of the Missouri Supreme Court analyze the two questions separately. *Viasystems*, 646 F.3d at 593 n.2.

#### A. General Jurisdiction

To establish general jurisdiction, a non-resident defendant's contacts with the forum state must be "continuous and systematic." *Helicopteros Nacionales de Colombia*, S.A. v. Hall, 466 U.S. 408, 416 (1984). "The defendant's affiliation with the forum state must be so ongoing, so 'as to render them essentially at home in the forum State.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

4

Case 5:11-cv-06052-FJG   Document 24   Filed 02/23/12   Page 4 of 10

Here, the record does not establish that defendant BWI's contacts with Missouri are continuous and systematic. As noted above, it is a foreign corporation with no presence in Missouri. BWI is not qualified to do business in Missouri and does not have an agent for service of process in Missouri. BWI has no property, offices, telephone listings, employees, sales representatives, property, or bank accounts in Missouri. BWI also does not market its products or services in Missouri, and it does not employ anyone in Missouri.

Plaintiff DFA argues that BWI conducted substantial business over a period of five years with DFA, a corporation headquartered in Missouri. Since 2006, BWI has engaged in more than 80 transactions worth a total of about $5 million.

Nonetheless, BWI itself neither conducted business in Missouri nor operated in such a way as to benefit from the protections of Missouri's courts. These casual connections seem to be the type that would "offend the traditional notions of fair play and substantial justice," as the United States Supreme Court described the critical analysis in establishing personal jurisdiction in *International Shoe*, in such a way as to make it unjust to declare general jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

B.  Specific Jurisdiction

A federal court may assume specific jurisdiction over a foreign defendant to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution. *Pecoraro,* 340 F.3d at 561. "Specific jurisdiction permits a state to exercise jurisdiction over a non-resident defendant in a suit 'arising from or related to' the defendant's contacts with the forum." *Austin Hardware and Supply, Inc. v. SFI of Tennessee, LLC*, 2011 WL 3489856, at *3 (W.D. Mo. Aug. 9, 2011) (quoting *Viasystems*, 2011 WL 2899147, at *2).

1.  Missouri Long-Arm Statute

Missouri's long-arm statute confers specific jurisdiction over a corporation as to any cause of action arising from the making of a contract within the state. Mo. Rev. Stat. §

5

506.500. "Under Missouri law, a contract is formed where the last act necessary to form a binding contract, acceptance of the contract, occurs." *Austin Hardware*, 2011 WL 3489856, at *3; *see also Primus Corp. v. Centreformat Ltd.*, 2006 WL 181953, at *3 (W.D. Mo. Jan. 23, 2006) (citing *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo.App. 2002)) and *Laser Vision Centers Inc. v. Laser Vision Centers Int'l, SpA*, 930 S.W.2d 29, 32 (Mo.App. 1996) (holding that for Missouri personal jurisdiction purposes, acceptance of a contract in Missouri is equivalent to forming a contract in Missouri).

None of the evidence in the record shows that the contract at issue in this case was formed within the state of Missouri. In the normal course of dealing between the two parties, contracts generally were formed during oral negotiations between Mr. Diaz and Mr. Butterfield. Mr. Diaz is based in Toronto, and Mr. Butterfield primarily works out of Michigan. As noted above, the oral negotiations generally followed one of two paths: either Mr. Butterfield in Michigan proposed the price and Mr. Diaz in Canada accepted or rejected it, or Mr. Diaz in Canada would name a price and Mr. Butterfield, as DFA's agent, either accepted it or rejected it from his office in Michigan. Some deals required several calls before an agreement was reached, making it difficult to determine where a specific contract was reached based on where acceptance occurred. However, under neither scenario was a contract formed in Missouri, as acceptance occurred either in Toronto or Michigan.

DFA contends that Mr. Butterfield frequently travels to DFA's headquarters in Missouri and has had communications with BWI while in Missouri. Nonetheless, DFA offers no evidence, nor does it specifically contend, that Mr. Butterfield was in Missouri and that BWI's agent had reason to believe that Mr. Butterfield was in Missouri when the March 2011 transaction was accepted and the contract was formed. Instead, the contract appears to have been formed in either Canada or Michigan. If a contract was formed in Missouri due to Mr. Butterfield's travels, that is exactly the sort of random, fortuitous contact that is insufficient to support personal jurisdiction.

6

Case 5:11-cv-06052-FJG   Document 24   Filed 02/23/12   Page 6 of 10

Because of these facts, it does not appear that the March 2011 contract occurred in Missouri. Therefore, the plaintiff has not demonstrated that the requirements of the Missouri long-arm statute have been met.

### 2. Due Process

Even if plaintiff had met the requirements of Missouri's long-arm statute, it does not appear plaintiff has met the requirements of the Due Process Clause. In assessing a defendant's contact with the forum state, the Court applies a five-part test: "1) the nature and quality of the contacts with the forum state; 2) the quantity of those contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)).

***a. Nature and quality of the contacts with the forum state.***

Defendant BWI is a Canadian company that has no physical presence in Missouri, and none of its employees have been to Missouri to conduct business. BWI has no offices, employees, property, telephone listings, or bank accounts in Missouri. BWI is not and never has been qualified to do business in Missouri. BWI has no agent for service of process in Missouri. Neither does BWI advertise or market for business in Missouri. None of the products BWI ordered were produced in Missouri or shipped from Missouri.

DFA points out BWI negotiated price and quantity with a DFA employee who sometimes was in Missouri during negotiations. DFA also notes that BWI sought a business relationship with DFA while knowing it is a Missouri-based company. BWI also requested a line of credit and provided supporting documentation for the request to DFA's Missouri office, including the exchange of phone calls and e-mails with DFA employees in Missouri.

However, the use of mail, telephone, e-mails, and other interstate communications is not by itself "sufficient to constitute the 'transaction of any business' within the meaning

of the long-arm statute." *Scullin Steel v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982). Further, the fact that an employee of plaintiff's may have been negotiating from Missouri instead of his home office is a random, fortuitous contact outside the control of defendant. Because of these facts, it does not appear that the nature and quality of BWI's actions demonstrate a purposeful direction of business toward Missouri.

### b. Quantity of the contacts with the forum state.

BWI maintained a five-year relationship with DFA, a Missouri corporation. This included about 80 transactions that totaled more than $5 million worth of exchanges. Throughout these transactions, including BWI's request for a line of credit and DFA's approval, included e-mail and telephone exchanges with DFA employees in Missouri.

But despite BWI's contracts with DFA, none of them appear to have been entered into in Missouri, including the one at issue. The negotiations were between a BWI agent in Canada and a DFA agent in Michigan. BWI also notes the U.S. Supreme Court has ruled that a contract with a resident of the forum state alone is not sufficient to establish jurisdiction. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 478-9 (1985). Instead, the proper analysis centers on "prior negotiations and contemplated future consequences, along with the terms of the contracts and the parties actual course of dealing." *Id.* In this case, the contracts were not formed in Missouri, and the product was not shipped from Missouri. None of the meetings between BWI and DFA agents occurred in Missouri. Performance of the contracts occurred completely outside of the state. While there were telephone and e-mail exchanges, that standing alone is insufficient to establish jurisdiction.

In sum, the quality and nature of BWI's contacts with Missouri do not support specific jurisdiction in this case.

### c. Relation of the cause of action to the contacts

BWI contends that the contract at issue in this case was not formed in Missouri, as the agents who orally negotiated and confirmed this contract were located in Canada and

8

Michigan. But even if Mr. Butterfield, DFA's negotiating employee in Michigan, finalized this contract while on one of his infrequent days in Kansas City, a contract alone is not sufficient to exercise jurisdiction. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 478-9 (1985). Further, DFA shipped none of the product from Missouri or to Missouri under this contract.

DFA argues that BWI's contacts are related to the cause of action by more than just the contract. DFA points to the line of credit requested by BWI and says it would not have released the product to BWI without this line of credit or advance payment.

However, DFA's complaint alleges a breach of an oral agreement to pay pursuant to invoice, not a breach of a line of credit. DFA also does not offer evidence that BWI drew upon the line of credit to execute the disputed contract. Together, these facts appear insufficient to establish the minimum contacts necessary for the forum state to exercise personal jurisdiction.

### *d. Interest of the forum state in providing a forum for its residents*

Plaintiff DFA is a Missouri entity, and the State of Missouri has an interest in resolving this case. However, for reasons noted above, it appears the mandates of Due Process do not comport with the exercise of personal jurisdiction over the defendant, BWI.

### *e. Convenience of the parties*

The plaintiff is a Missouri entity, making it convenient for DFA to litigate this matter in Missouri. However, BWI is a foreign corporation, which is domiciled in Canada, that primarily does business outside of the State of Missouri and outside of the United States. Consequently, this factor should not weigh heavily in the analysis of specific jurisdiction.

## IV. CONCLUSION

BWI does not operate in the State of Missouri. It is not licensed to conduct business in Missouri, has no registered agent and no property in the state, and does not advertise or market for business in the state. The contract at issue in this case likely occurred in either Canada or Michigan, not Missouri, and the performance of the contract – shipping

9

of the product – did not occur in Missouri. BWI's contacts with the forum state are too casual, irregular and attenuated for this Court to establish either general jurisdiction over BWI or specific jurisdiction based on this particular contract.

Accordingly, it is hereby **ORDERED** that Defendant BWI's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 6) is hereby **GRANTED.** All other pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date: <u>February 23, 2012</u>　　　　　　　　　　　*/s/ Fernando J. Gaitan, Jr.*
Kansas City, Missouri　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge

10

Case 5:11-cv-06052-FJG   Document 24   Filed 02/23/12   Page 10 of 10